**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:**

LAWRENCE YORE, as Personal Representative
for THE ESTATE OF REBECA YORE,
Deceased,

    Plaintiff,

vs.

GVDB OPERATIONS, LLC, a Florida
Limited Liability Company d/b/a
GRAND VILLA OF DELRAY EAST and JSMGV
MANAGEMENT COMPANY, LLC, a Florida
Limited Liability Company,

    Defendants.

_____/

## **NOTICE OF REMOVAL**

    COMES NOW Defendants, GVDB OPERATIONS, LLC, a Florida Limited Liability Company d/b/a GRAND VILLA OF DELRAY EAST and JSMGV MANAGEMENT COMPANY, LLC, by and through undersigned counsel, and hereby remove this action from the Circuit Court of Palm Beach County, Florida, pursuant to 28 U.S.C. §§1331, 1441, 1442, and 1446 and 42 U.S.C. §§247d-6d(d)(1), (e)(1), while reserving all defenses and all objections to venue based on §247d-6d(e)(1).

1.     Plaintiff filed this case, CASE NO. 50-2021-CA-003865-XXXX-MB, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida on March 23, 2021. However, that Complaint was never served on Defendants, and they had no knowledge of it. On July 20, 2021, Plaintiff filed an Amended Complaint. Am. Compl. ¶ 1, **Ex. A.**

2.     Defendants were served with the Amended Complaint on July 27, 2021. **Ex. B.**

3.     Defendants are timely filing this Notice of Removal within thirty days of service of process as required by 28 U.S.C. §1446(b).

1

4. Removal to the United States District Court for the Southern District of Florida, Palm Beach Division, is appropriate because the Complaint was filed in the Circuit Court of Palm Beach County, Florida, located within the jurisdiction of this District. *See* §1441(a); Fed. R. Civ. P. 81(c)(2). Also, removal is proper under the federal officer removal statute (§1442(a)) and by virtue of federal question jurisdiction based on complete preemption and the *Grable* doctrine.

5. As required by §1446(d), concurrent with this filing, Defendants are filing a true and accurate copy of this Notice of Removal with the Circuit Court of Palm Beach County of the State of Florida. Defendants are also providing notice to Plaintiff of this filing pursuant to §1446(d).

6. By filing this Notice of Removal, Defendants do not waive any other rights or defenses that may be available to them.

## I. STATEMENT OF FACTS

### A. The PREP Act

7. The Public Readiness and Emergency Preparedness ("PREP") Act, 42 U.S.C. §§247d-6d, 247d-6e, was enacted by Congress authorizing the United States Department of Health and Human Services ("HHS"), through issuance of a declaration, to direct and otherwise utilize the private resources of entities, such as Defendants, as part of the nation's critical infrastructure in times of a national public health crisis. This critical healthcare infrastructure is directed and overseen through a nationwide structure of "Authorities Having Jurisdiction" ("AHJ").[1] To effectuate a coordinated response, Congress necessarily required that these entities would be given the type of jurisdictional and immunity protections provided to federal officers under similar conditions. Specifically, the PREP Act provides that under an HHS PREP declaration any claim for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure,[2] countermeasure program, or countermeasure facility, such as Defendants and

---

[1] An AHJ is a "public agency or its delegate that has legal responsibility and authority for responding to an incident, based on political or geographical … or functional ... range or sphere of authority." Declaration, 85 Fed. Reg. 15,198, 15,202 (Mar. 17, 2020); *see also* Fourth Amended Declaration, 85 Fed. Reg. 79,190, 79,197 (Dec. 3, 2020) (AHJs include "federal, state, local ... authorities and institutions acting on behalf of governmental entities" and directing PREP Act participants regarding COVID-19 countermeasures and COVID-19 mitigation efforts).

[2] A "covered countermeasure" is a preventative measure that mitigates or prevents the transmission of COVID-19. §247d-6d(i)(1); Declaration, 85 Fed. Reg. at 15,202 (Covered Countermeasures include any designated device used to treat, diagnose, cure, prevent, or mitigate COVID-19, or any device used in the administration of any such product); Second Amended Declaration, 85 Fed. Reg. 35,100, 35,102 (June 8, 2020) ("covered countermeasures" include those measures used to

those countermeasures utilized by Defendants, shall give rise only to an "exclusive federal cause of action" in an "exclusive federal jurisdiction" and shall be otherwise barred. §§247d-6d(a)(1) (providing "suit and liability" immunity), (d)(1) (providing an "exclusive Federal cause of action"), (e)(1) (providing "exclusive federal jurisdiction"); *see also id*, (b)(8) (preemption of state law).

8. In a further effort to immunize HHS's private-sector partners, ensure a federal forum, and compensate claimants, Congress designed an "exclusive" no-fault monetary fund for those injured by the use or administration of covered countermeasures, which fund must be exhausted prior to relief under the federal civil claims process. §§247d-6e(a) (publicly funded Covered Countermeasure Process Fund ("CCPF") for "purposes of providing timely, uniform, and adequate compensation to eligible individuals for covered injuries"), (d)(1) (required exhaustion of administrative process prior to pursuing litigation in U.S. District Court for the District of Columbia ("D.D.C.")), (d)(2) (tolling of statute of limitations), (d)(4) ("exclusivity" of federal administrative remedy except for litigation in D.D.C.), (d)(5) (election to accept administrative compensation or proceed to litigation claim in D.D.C.); *see also* 42 C.F.R. §§110.1–110.100 (regulations related to administrative claims process).

9. Congress' "exclusive" Federal cause of action is the single exception to PREP Act immunity. 42 U.S.C. §247d-6d(d)(1). This PREP Act Federal cause of action is part of a congressionally created comprehensive litigation scheme. §§247d-6d(a)(2) (scope and accrual of claims for loss), (c)(1) (liability standard of willful misconduct), (c)(3) (burden of proof), (d)(1) (singular "Exception To Immunity Of Covered Persons" setting forth "exclusive federal cause of action"), (e)(1) (exclusive federal jurisdiction), (e)(2) (choice of law provision), (e)(3) (pleading

---

limit the harm that COVID-19 might otherwise cause and any device used in the administration of such measure). These covered countermeasures include personal protective equipment ("PPE"), such as face masks, respirators, gloves, and gowns, as well as thermometers, hand sanitizer, and COVID-19 tests—all countermeasures invoked by the Complaint. *See* Fourth Amended Declaration, 85 Fed. Reg. 79,190, 79,194 (Dec. 3, 2020) (citing *e.g.* countermeasures authorized by the Food and Drug Administration ("FDA") under the Federal Food, Drug, and Cosmetic Act, some of which are listed in Facemask Emergency Use Authorizations (available at https://www.fda.gov/medical-devices/coronavirus-disease-2019-covid-19-emergency-use-authorizations-medical-devices/personal-protective-equipment-euas). Unlike H1N1 and other such public health threats, COVID-19 had no vaccine or effective treatment for nearly a year. The most effective countermeasures to mitigate and prevent the spread of the novel and deadly COVID-19 virus were the foregoing countermeasures when used by and administered to those who came in contact with susceptible persons, as well as when used by and administered to susceptible persons.

standard of particularity), (e)(4) (pleading requirements of verification and certain materials), (e)(5) (congressional creation of a "three-judge court" in the D.D.C. and direct appeal to Supreme Court from an order granting or denying injunction), (e)(6) (motions practice and discovery process), (e)(7) (parameters for recoverable damages and collateral source issues), (e)(8) (noneconomic damages allowed), (e)(9) (Rule 11 sanctions), (e)(10) (interlocutory appeal process in the United States Court of Appeals for the District of Columbia Circuit).

10. Other than the exclusive pre-litigation administrative remedy (§247d-6e) and the litigation remedy in the D.D.C. (§§247d-6d(d)(1), (e)(1)), all other claims are barred by absolute "suit and liability immunity" and broad preemption. §§247d-6d(a)(1), (b)(8).

11. The Secretary of HHS first issued a public health emergency with relation to the COVID-19 virus on March 17, 2020. In response to the COVID-19 global pandemic, the Secretary announced that "[l]iability immunity as prescribed in the PREP Act ... is in effect" for any "[a]ctivities authorized in accordance with the public health and medical response of the [AHJs] to prescribe, administer, deliver, distribute or dispense the Covered Countermeasures" related to COVID-19. Declaration, 85 Fed. Reg. at 15,201. The Declaration defined "administration" of countermeasures broadly to extend beyond the physical distribution of COVID-19 countermeasures to the "management and operation of countermeasures programs, or management and operation of locations for [the] purpose of distributing and dispensing countermeasures." *See id.* at 15,202.

12. HHS has since issued eight amendments and six Advisory Opinions spanning two presidential administrations regarding the evolving COVID-19 crisis and its nationally coordinated response. These amendments and Advisory Opinions instruct that the PREP Act's is to be interpreted and applied broadly—specifically, HHS has time and again reiterated that PREP Act's immunity and preemption clauses are to be broadly applied to bar state law suits.[3]

13. Notably, the Fourth Amended Declaration, Advisory Opinion 20-04, and Advisory Opinion 21-01 confirm that the PREP Act is invoked by allegations of "use" or administration of countermeasures, and alleged failure to act or inaction, where the non-use was the result of

---

[3] HHS refers eight times to the broad applicability of preemption of state law claims, *see* Advisory Opinion 21-01, 1; Advisory Opinion 20-04, 3 (Oct. 23, 2020); Advisory Opinion 20-02, 4–5 (May 19, 2020); Advisory Opinion 20-01, 2 (May 19, 2020), and six times to the broad applicability of immunity from state law claims. *See* Advisory Opinion 20-04, 1–2; Advisory Opinion 20-01, 2, 4, 7.

conscious decision-making by a covered entity or person. Fourth Amended Declaration, 85 Fed. Reg. at 79,191 ("there can be situations where not administering a covered countermeasure … can fall within the PREP Act"); Advisory Opinion 20-04, 6-7 (rejecting the "non-use" reasoning in an example of a program planner's decision to not utilize a countermeasure in accordance with AHJ guidance—non-use reasoning is "wrong"); Advisory Opinion 21-01, 4 (Jan. 8, 2021) (discussing countermeasure decision-making as the "grist" of program planning);[4] *see also* §247d-6d(c), (e) (Congress expressly contemplates PREP coverage of allegations of "non-use" or inadequate use by repeatedly using the phrase "acts and *omissions*" in the Act) (emphasis added). According to Advisory Opinion 21-01, any view that the PREP Act does not encompass alleged omissions to use covered countermeasures "clashes with the plain language of the PREP Act, which extends immunity to anything 'relating to' the administration of a covered countermeasure." Advisory Opinion 21-01, 3. Additionally, Advisory Opinion 21-01 states that "[t]he PREP Act is a 'Complete Preemption' Statute," because it establishes both a federal cause of action and an administrative claim as the only viable remedy arising from COVID-19 countermeasure, countermeasure programs or countermeasure facilities, and expressly vests exclusive jurisdiction in federal court. *Id.* at 2; *see also* §§247d-6d(c)(2)(A), (c)(2)(B) (Secretary in conference with the Attorney General is to set the scope of civil litigation and the conduct that falls within it).

    **B.**    **HHS As The Leader Of The Nation's Healthcare and Public Health Critical Infrastructure**

14.    Once COVID-19 began to spread, the federal government declared that healthcare providers, such as Defendants, were "critical infrastructure" businesses obligated to aid the federal government in preventing the spread of the virus during this unprecedented national emergency by following the federal government's direction under its close supervision.[5] The nation's critical

---

[4] Note that the Secretary has determined that the Declaration is to be read in conjunction with the Office of General Counsel's Advisory Opinions, thereby incorporating all said Advisory Opinions into the Declaration, which is controlling as directed by Congress (*see* 85 Fed. Reg. at 79,195) and, alternatively, requires *Chevron* and *Auer* controlling deference. *See Chevron U.S.A,, Inc. v. Nat. Resource Defense Council*, 467 U.S. 837, 843–44 (1984); *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (agency's interpretation of its own regulations are controlling unless "plainly erroneous or inconsistent with the regulation").

[5] *See generally* Essential Services and Activities During COVID-19 Emergency, Executive Order No. 20-91, *available at* https://www.flgov.com/wp-content/uploads/orders/2020/EO_20-91-com pressed.pdf (last visited Apr. 28, 2021) (expressly naming assisted living facilities as "essential" business); *see also* Memorandum on Identification of Essential Critical Infrastructure

infrastructure is "so vital to the United States that [its] incapacity or destruction ... would have a debilitating impact on security, national economic security, national public health or safety, or any combination of those matters." 42 U.S.C. §5195c(e).

15. During the COVID-19 pandemic, the federal government instructed members of the healthcare critical infrastructure such as Defendants to carry out the duties of the government to prevent and mitigate the spread of the novel virus and to ensure the continued provision of "services critical to maintaining the national defense, continuity of government, economic prosperity, and quality of life in the United States." *Id.*; §5195c(b)(3). For example, in response to the nationwide PPE shortage, the Federal Emergency Management Agency ("FEMA") worked closely with businesses designated as "healthcare/public health" critical infrastructure to address the need for PPE and other critical supplies to continue operations in accordance with CDC guidance.[6] Also, at the very beginning of the COVID-19 crisis in the United States, the federal government enlisted nursing facilities and assisted living communities in its efforts to fulfill the government's task of ensuring that these facilities could assist in the safe transfer and admission of patients between healthcare facilities during the pandemic. In March 2020, it was reported that U.S. hospital beds were already maxed out, limiting healthcare facilities' ability to handle the anticipated influx of additional COVID-19 patients.[7]

16. Further, as a senior assisted living facility declared to be a healthcare facility for purposes of the COVID-19 pandemic and as a facility housing some of the nation's more COVID-19 vulnerable citizens, Grand Villa was an HHS declared program planner under the PREP Act, working under and directed by HHS and its AHJ network. Declaration, 85 Fed. Reg. at 15,202; *see also* HHS Response Letter, 1 (Aug. 14, 2020) (Grand Villa is a "program planner" and "qualified person"); §§247d-6d(i)(6) (defines a "program planner" as a person who supervises or

---

Workers During COVID-19 Response, CISA.gov, *available at* https://www.cisa.gov/sites/default/files/publications/CISA-Guidance-on-Essential-Critical-Infrastructure-Workers-1-20-508c.pdf (last visited Apr. 28, 2021).

[6] Congress expressly approved and supported the role of the federal government in overseeing the operation of "critical infrastructure" skilled nursing homes and assisted living communities by allocating additional funding to such healthcare providers under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub.L. 116–136, to accommodate their ongoing operations in light of the pandemic.

[7] *U.S. Hospital Beds Were Already Maxed Out Before Coronavirus Pandemic*, U.S. News (Mar. 26, 2020) *available at* https://www.usnews.com/news/health-news/articles/2020-03-26/us-hospital-beds-were-already-maxed-out-before-coronavirus-pandemic (last visited Apr. 28, 2021).

administers a countermeasure program plan and facility/location), (5) (defines a "person" to include a "private corporation"); Declaration, 85 Fed. Reg. at 15,200 (explaining role of program planner in COVID-19 response).

### C. Plaintiff's Complaint

17. The Complaint asserts claims against Defendants in the context of their use and administration of COVID-19 countermeasures to Ms. Yore during the COVID-19 pandemic. *See generally* Am. Compl. While Plaintiff purports to bring these claims under color of state law, the allegations necessarily implicate Defendants' use and administration of covered countermeasures and their operation and management of a covered countermeasure program and a covered countermeasure location/facility, all of which is squarely controlled and circumscribed by federal law under the PREP Act. (*Id.* at ¶¶ 16(a–c), 34, 43(f, h–l), 47(d–h, j–l), 48, 62(d–e), 64(a–b) (PPE); 31–36, 64(c–d) (COVID-19 testing)).

18. Plaintiff alleges that GRAND VILLA DELRAY EAST was a licensed assisted living facility in Delray Beach, Florida. *Id.* at ¶ 10.

19. In addition, Plaintiff states that Ms. Yore resided in GRAND VILLA DELRAY BEACH EAST during the COVID-19 pandemic. *Id.* at ¶¶ 9–11.

20. Plaintiff questions the adequacy of Defendants' administration and use of COVID-19 countermeasures as well as their operation and management of a COVID-19 countermeasure program and a location/facility as defined by HHS's Declaration under the PREP Act. For instance, in addition to alleging covered countermeasure use (albeit inadequate or untimely) (*id.* at ¶¶ 16(a–c), 34, 43(f, h–l), 47(d–h, j–l), 48, 62(d–e), 64(a–b) (PPE); 31–36, 64(c–d) (COVID-19 testing)), the Complaint attaches and fully incorporates an administrative complaint of the Florida Agency for Health Care Administration ("AHCA") (*id.* at ¶ 18, Exhibit B), cites to guidance from the Centers for Disease Control and Prevention ("CDC") (*id.* at ¶¶ 28–29, 37, 40, 65), and guidance from and oversight by the Florida Department of Health (*id.* at ¶¶ 24, 39, 41, 46, 60–61)— all AHJs working in coordination with HHS and overseeing Grand Villa as a federal officer and program planner of the national COVID-19 emergency effort. Such claims necessarily arise from and relate to Defendants' use and administration of COVID-19 countermeasures under the PREP Act. HHS has defined the term "administration to include decisions made by program planners,[8]

---

[8] The term "program planner" means "a State or local government, including … a person employed by the State or local government, or other person who supervised or administered a program with

7

such as Defendants, in how they managed and operated a COVID-19 countermeasure program as well as how they ran the facility in which such program was administered.

21. More particularly, the AHCA complaint expressly recognizes and clearly demonstrates Grand Villa's use of PREP covered countermeasures, Grand Villa's status as a federal officer and Grand Villa's position as a program planner under an AHJ. *See id.* at Exhibit B, ¶¶ 1, 3–5 (citing AHCA's authority over Grand Villa), 10, 12, 15, 17–19, 30, 39 (citing COVID-19 specific directives), 22–25 (regarding its countermeasure testing and its use of test results), 26 (as of May 11, 2020, Grand Villa complied with CDC guidelines regarding resident mask use), 32(f) ("Staff member 'B' was wearing a gown"), 32(h)(1) ("Resident … with a mask below the chin"), 32(i) ("Resident … mask now over the mouth"), 32(j)(1) ("Resident …pulling mask up … and … down"), 32(j)(5) ("Resident … provided a mask by staff"), 32(k)(1) ("Residents …masks noted below their chins"), 32(l), (n)(1) ("Residents started using [PPE] after first positive case"), 32(m) ("Only the staff wore masks when she last worked"), 32(n)(2), (p) ("residents mask was strapped to ears"), 32(r) ("assistant ran … to help with mask"), 33–34 (confirming resident mask use), 36(b) (staff wearing gowns and masks, residents wearing masks), 37(b) (procedures for PPE use and conservation), 38 (procedures for hand sanitizer use), 40 (confirming staff PPE use and procedures/conservation), 41, 50, 58 (confirming training on PPE use).[9] AHCA's role as an HHS AHJ and its legal enforcement of COVID-19 directives demonstrate control over Grand Villa.

22. Plaintiff's Complaint cannot be read without questioning the sufficiency of Defendants' use and administration of covered countermeasures, such as facemasks, thermometers, and tests, to prevent and mitigate the spread of COVID-19, as well as their management and operation of countermeasure program for dispensing countermeasures, monitoring, screening, and testing patients, employees and visitors and otherwise managing and operating a COVID-19

---

respect to the administration … or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure in accordance with a declaration under subsection (b)." §247d-6d(i)(6); *see also id.* at (i)(2)(iii) (a program planner is a "covered person").

[9] Throughout the Amended Complaint, Plaintiff cites to guidance from the CDC, which was a primary AHJ coordinating in concert with HHS the nation's COVID-19 response under the PREP Act. Am. Compl., at ¶¶ 21, 26, 28, 29, 30, 40, 63; *see also* CDC Crisis Response Cooperative Agreement: COVID-19 Public Health Workforce Supplemental Funding Guidance (last reviewed May 27, 2021), available at https://www.cdc.gov/cpr/readiness/funding-ph.htm.

countermeasure program or facility. *Id.* at ¶¶ 16(a–c), 34, 43(f, h–l), 47(d–h, j–l), 48, 62(d–e), 64(a–b) (PPE); 31–36, 64(c–d) (COVID-19 testing); *see also id.* at ¶ 18, Exhibit B, ¶¶ 22, 25–27, 37, 38, 39, 40–44, 46, 60–64 (alleging interaction with and control of Defendants by AHJs).

## II.     FEDERAL JURISDICTION EXISTS UNDER 28 U.S.C. §1442(a)(1)

23.     Jurisdiction is proper under §1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. The policy reason behind federal jurisdiction in this context is to protect the federal government from state interference with its operations, including when that federal government operation is conducted through private surrogates, such as Grand Villa. *Caver v. Central Alabama Electric Cooperative*, 845 F.3d 1135, 1142 (11th Cir. 2017) (where the Eleventh Circuit found a private electric cooperative to have federal officer protections under §1442); *see also Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1424 (11th Cir. 1996) (found private engine manufacturer and its inspector employee to be federal officers, therefore, determining removal to be proper for purposes of claims alleging their faulty certification of a private aircraft). The right of federal officer removal is "absolute" whenever a suit in state court is for any act "under color of federal office, regardless of whether the suit could originally have been brought in a federal court." *Magnin*, 91 F.3d at 1424 (quoting *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)). "Unlike the general removal statute, the federal officer removal statute [§1442(a)] is to be 'broadly construed' in favor of a federal forum." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def Ass'n of Phila.*, 790 F.3d 457, 466–67 (3rd Cir. 2015).

24.     Where a defendant is not a federal agency or federal employee, removal is appropriate under §1442(a)(1) and *Caver* when the removing defendant establishes that: (1) it was a person "acting under" an agency or federal officer within the meaning of §1442(a)(1); (2) it performed the actions for which it is being sued under color of federal office; and (3) it raises a colorable defense based upon federal law. 845 F.3d at 1142. All requirements for removal under §1442(a)(1) are satisfied here as set forth below.

25.     Here, Defendants satisfy the first element for federal officer removal because, as part of the country's critical infrastructure, Defendants acted at all relevant times "to assist, or to help carry out, the duties or tasks of the federal superior," by helping the federal government "fulfill other basic governmental tasks" that otherwise "the Government itself would have had to perform," *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153-54 (2007). *See Wazelle v. Tyson*

9

*Foods, Inc.*, No. 20-cv-203 (N.D. Tex. June 25, 2021) (designation as critical infrastructure significant in finding that private entity was acting under federal officer during the early and rapidly developing days of the COVID-19 pandemic); *Fields v. Brown*, No. 6:20-cv-00475, 2021 WL 510620 (E.D. Tex. Feb. 11, 2021) (same).

26. Since the pandemic began, HHS and its AHJs, like the CDC, have been explicitly guiding operational decisions related to clinical pandemic response in senior assisted living facilities all as a part of the nation's critical healthcare infrastructure and as a program planner under the PREP Act. *See* discussion, *supra* ¶¶ 13–15. Senior assisted living facilities were ordered to restrict visitation, cancel communal dining, and implement active screening of residents and staff for fever and respiratory symptoms.[10] Facilities were instructed on, among other things, which residents and staff to test for COVID-19, under what circumstances to use and how to conserve PPE, when to permit staff who had COVID-19 to return to work, how to mitigate staff shortages including when to permit COVID-19 positive but asymptomatic staff to return to work, and how to handle the isolation of residents infected with COVID-19 and those under investigation for COVID-19. These very detailed directives and instructions represented a marked departure from the typical regulatory structure which existed before the pandemic. Plaintiff acknowledges that Grand Villa was subject to the regulations and mandates of the Secretary's AHJs, specifically the CDC, the Florida Department of Public Health ("FDPH"), and the Palm Beach County Health Department ("PBCHD"). Am. Compl. at ¶¶ 20–23, 24–28.

27. Through their role as program planners, Defendants helped federal officers fulfill a basic governmental task that the government otherwise would have had to perform" and in so doing became an instrumentality of the United States". *Caver*, 845 F.3d at 1143.

28. Defendants also satisfy the "nexus" or "causation" requirement for federal officer jurisdiction, which requires that the alleged conduct have been undertaken "for or relating to" a federal office. To meet this requirement, "it is sufficient for there to be a connection or association between the act in question and the federal office." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 471 (3d Cir. 2015). *See*

---

[10] *E.g.*, CDC, *Strategies for Optimizing the Supply of Facemasks* (updated Mar. 17, 2020); CDC, *Using Personal Protective Equipment* (updated Aug 19, 2020); Exec. Order No. 20-009, *In Re: Suspension of Statutes, Rules, and Orders Pursuant to Executive Order Number 20-52, Made Necessary by the COVID-19 Public Health Emergency*; Exec. Order No, 20-52, *Emergency Management-COVID-19 Public Health Emergency*.

*Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (Congress "broadened federal officer removal to actions, not just causally connected, but alternatively connected or associated, with acts under color of federal office." As the *Wazelle* court pointed out, a direct causal nexus no longer governs. 2021 WL 2637335, at *5.

29. The very nature of the Plaintiff's Complaint demonstrates a connection or association between the act in question and the federal office. Plaintiff himself acknowledges that Grand Villa is a state licensed facility following (he contends inadequately) the directives of the CDC, the FDPH, and the PBCHD. *Id.* at ¶¶ 10, 18, 20–31, 34–64, 65(a), 66, 73, 83, 95, Exhibit B. Plaintiff alleges COVID-19 disease control countermeasures, as well as policies, practices, and procedures, directed by the federal government were used by Grand Villa, albeit in a purportedly inadequate and untimely manner. *Id.* at ¶¶ 1 ¶¶ 16(a), 35, 43(f, h–n, p, r), 47(d–h, j–l), 48, 62(d, e), 64(a, b)] (PPE); 31–36, 64(c, d) (COVID–19 Testing). These are the same countermeasures as the ones identified in the PREP Act as "Covered Countermeasures" distributed, dispensed, used, and administered by program planners like Grand Villa pursuant to a countermeasure program in a countermeasure facility/location, all directed and controlled by AHJs. 42 U.S.C. §247d-6d(i)(6); Declaration, 85 Fed. Reg. at 15,200 (defining and providing examples of the administration of covered countermeasures). Grand Villa was not a lone, isolated actor unilaterally making decisions regarding its residents in the face of COVID-19, as the Amended Complaint well demonstrates.

30. "[L]ogically, the choice of what safety precautions should be taken—such as whether personal protective equipment should be provided or what social-distancing measures should be adopted—is connected" to allegations that a defendant failed to keep a facility safe from COVID by taking measures compliant with relevant federal directives. *Wazelle,* 2021 WL 2637335, at *5; *see also Fields*, 2021 WL 510620, at *4.

31. Given that the federal government approved and directed the use of COVID-19 countermeasures by Grand Villa, and approved and directed the operations of Grand Villa in managing its response to the pandemic, and given those very countermeasures and operations are listed in the Complaint as allegedly having caused the death of Ms. Yore (*see* examples, *supra*), Grand Villa has shown a "causal nexus" between Plaintiff's claims and the federal conduct for which it is protected. *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 138 (2d Cir. 2008); *Caver*, 845 F.3d at 1145.

32. Further, Defendants present a colorable defense based on federal law. *Willingham*, 395 U.S. at 407. The determination of a colorable defense requires a "broad reading so as to encompass 'all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law'". *Caver*, 845 F.3d at 1145 (quoting *Florida v. Cohen*, 887 F.2d 1541, 1454 (11th Cir. 1989)). A defendant need only show it has a plausible federal defense. *Ruppel v. CBS Corp.*, 701 F.3d 1176 1182 (7th Cir. 2012). The consideration of federal officer removal is not constrained by Plaintiff's allegations. *Osborn v. Haley*, 549 U.S. 225, 249 (2007); *see also Caver*, 845 F.3d at 1145 ("Federal officer removal is thus an exception to the well-pleaded complaint rule, as 'the federal-question element is met if the defense depends on federal law'").

33. Defendants assert a colorable federal defense in this case—namely, immunity and preemption under the PREP Act for their administration and use of "covered countermeasures" about which Plaintiff complains. *See* discussion *infra*. Indeed, this defense is so clear that Plaintiff anticipated it and affirmatively pled, albeit unsuccessfully, that this Action is "**NOT**" subject to PREP and, then, specifically cited to the PREP immunity provision to assert that the Complaint allegations "**DO NOT**" assert "any countermeasures" as defined by the PREP Act. Am. Compl., ¶ 14; *see also* ¶ 15 (asserting the PREP Act required standard of care of "willful misconduct").

34. Accordingly, Defendants establish, and the Complaint affirms through its allegations, that they are federal officers under 28 U.S.C. §1442(a)(1), and are, thus, entitled to a federal forum via removal. As *Wazelle* and *Fields* recognized, federal court is the proper forum for this case because Defendants were "acting under the direction of multiple federal agencies" as part of the federal "critical-infrastructure designation" "since [the declaration of a national emergency on] March 13, 2020," *Fields,* 2021 WL 510620, at *3 & n.1, and Defendants "exhibited 'an effort to help assist, or carry out, the duties and tasks of the federal superior.'" *Wazelle,* 2021 WL 2637335, at *4 (quoting *Watson,* 551 U.S. at 152).

### III.     FEDERAL QUESTION JURISDICTION EXISTS BY VIRTUE OF COMPLETE PREEMPTION UNDER THE PREP ACT

#### A.     The PREP Act Is A Complete Preemption Statute

35. This case is also removable under §1441(a) on the basis of "original jurisdiction" because Plaintiff's Complaint asserts a claim "arising under" federal law within the meaning of §1331, as Plaintiff's allegations invoke the exclusive federal cause of action, exclusive federal jurisdiction, the immunities from suit and liability, and the preemption of state law promised in the PREP Act.

*See* 42 U.S.C. §§247d-6d(a)(1) (immunity), (b)(8) (preemption), (d)(1) (federal cause of action), (e)(1) (federal jurisdiction). In codifying the PREP Act, Congress intended to regulate a national response to a pandemic and federalize any litigation fallout for its private partners' assistance in that effort as is evidenced by its affirmative divesture of presumed state court concurrent jurisdiction. *Id*. Congress accomplished this by designing an exclusive and comprehensive federal statutory scheme to ensure PREP Act claims will be heard and maintained in the federal court system (§§247d-6d (d)(1), (e)(1)), instead of an additive or supplemental action to a panoply of state law claims. *See Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1 (1983); *Tafflin v. Levitt*, 493 U.S. 455 (1990); *Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 823 (1990); *see also In re WTC Disaster Site*, 414 F.3d 352, 371(2d Cir. 2005) (stating "The question of whether federal law preempts state law is fundamentally a matter of Congress's intent" when applying complete preemption doctrine to a national disaster response statutory scheme much like the PREP Act).[11]

36.  Moreover, the PREP Act expressly satisfies the *Beneficial* test of preemption. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). The Supreme Court has succinctly stated the two-part test for complete preemption and removal jurisdiction:  1) whether Congress has provided an "exclusive federal cause of action"; and 2) whether Congress "sets forth procedures and remedies governing that cause of action". *Id*. Specifically, the PREP Act establishes a pre-litigation no-fault administrative monetary fund for those injured by the use or administration of covered countermeasures that must be exhausted prior to relief under the federal civil claims process (§§247d-6e(a) (publicly-funded CCPF for "purposes of providing timely, uniform, and adequate compensation to eligible individuals for covered injuries"), (d)(1) (required exhaustion of administrative process prior to pursuing litigation in D.D.C.), (d)(2) (tolling of statute of

---

[11] The complete, affirmative divesting of state court jurisdiction is further exhibited by Congress' creation of a "special court" with a three-judge panel under 28 U.S.C. §2284. §247d-6d(e)(5) (referencing §2284 and the establishment of a three-judge panel for all claims relating to COVID-19 countermeasures); *see also* §2284(a) (providing that such a three-judge court "shall be convened when otherwise required by Act of Congress"). Accordingly, only this particular court—the D.D.C.—can hear this claim. *In re WTC*, 414 F.3d at 375 (to "give effect" to Congress' intent in establishing a special court, "this provision must be interpreted as authorizing the removal of the action to the federal court). Therefore, upon removal, Plaintiff's claim is due to be transferred to the D.D.C. pursuant to 28 U.S.C. §1631. *Christianson v. Colt Indus. Operating Corp*., 486 U.S. 800, 803 (1988).

13

limitations), (d)(4) ("exclusivity" of federal administrative remedy except for litigation in D.D.C.), (d)(5) (election to accept administrative compensation or proceed to litigation claim in D.D.C.); *see also* 42 C.F.R. §§110.1–110.100 (regulations related to administrative claims process)). The PREP Act also provides for an exclusive and comprehensive Federal cause of action as the single exception to immunity (42 U.S.C. §247d-6d(d)(1)) with its own litigation scheme (§§247d-6d(a)(2) (scope and accrual of claims for loss), (c)(1) (liability standard of willful misconduct), (c)(3) (burden of proof), (d)(1) (singular "Exception To Immunity Of Covered Persons" setting forth "exclusive federal cause of action"), (e)(1) (exclusive federal jurisdiction), (e)(2) (choice of law provision), (e)(3) (pleading standard of particularity), (e)(4) (pleading requirements of verification and certain materials), (e)(5) (congressional creation of a "three-judge court" in the D.D.C. and direct appeal to Supreme Court from an order granting or denying injunction), (e)(6) (motions practice and discovery process), (e)(7) (parameters for recoverable damages and collateral source issues), (e)(8) (noneconomic damages allowed), (e)(9) (Rule 11 sanctions), (e)(10) (interlocutory appeal process in the United States Court of Appeals for the District of Columbia Circuit)).

37. This statutory frame expressly provides for both an "exclusive" and comprehensive Federal cause of action, an "exclusive" Federal jurisdiction in the D.D.C. and an "exclusive" Federal administrative claims process thereby amply meeting the *Beneficial* two-prong test. *Beneficial*, 539 U.S. at 8. *See also Rachal v. Natchitoches Nursing & Rehab Center LLC*, Civil Docket No. 1:21-CV-00334 (W.D. La. April 30, 2021) (finding the PREP Act is a complete preemption statute).

    **B.    Plaintiff's Claims Fall Within The Purview Of The PREP Act**

38. Here, based on the face of Plaintiff's Complaint, the totality of the allegations made therein, and the logical impact of its most central allegations, the PREP Act is implicated by Plaintiff's claims against Defendants as "covered persons" engaged in "recommended activities" under the Act. *See* §247d-6d(b)(1); Am. Compl. ¶¶ 16(a), 37, 43(f, h–n, p, r)– 47(d–h, j–l), 48, 62(d, e), 64(a, b)] (PPE); 31–36, 62(c, d) (COVID–19 Testing), Exhibit B).

39. Defendants are "covered persons" and "program planners" under the PREP Act because their assisted living and memory care facility is licensed by the State of Florida and because they were following the guidance of AHJs when administering and using covered countermeasures, and making decisions relating to such use and administration in managing and operating a COVID-19

14

countermeasure program plan and location/facility. *See* §247d-6d(i)(2); Advisory Opinion 20-04; Response Letter, 1 (declaring Senior Assisted Living Communities as "program planners" and "qualified persons" under the PREP Act, which manage and operate COVID-19 countermeasure programs and/or COVID-19 countermeasure facilities).

40. Specifically, Defendants meet the requirements of a "program planner" of countermeasures under the PREP Act, and they are also "qualified persons who prescribed, administered or dispensed" a countermeasure under the PREP Act. *See* §247d-6d(i)(2); Advisory Opinion 20-04. Defendants were acting as "program planners" that supervised the infection control program, under which FDA-approved PPE, such as face shields and masks, gloves, and gowns, as well as diagnostic countermeasures, sanitizers and disinfectants, were distributed and administered to staff and patients of the facility in an effort to diagnose, mitigate, and prevent COVID-19 as expressly provided for in §247d-6d(i)(6). Further, Defendants' employees were acting as employees of a "program planner" who supervised and administered the infection control program that provided and administered FDA approved countermeasures among patients and staff. Defendants' employees also were also acting as "qualified persons" under §247d-6d because the employees were authorized to administer, deliver, and use FDA covered countermeasures, such as PPE and FDA approved COVID-19 devices and diagnostic tests, to diagnose and prevent COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom. *See* Advisory Opinion 20-04.

~~41.~~ Because Defendants acted in their statutory role as program planners to make reasonable choices and "reasonably" follow AHJ guidance in using and allocating covered countermeasures, managing the infection control program, prioritizing the administration or use of covered countermeasures, and following applicable guidance, all of their actions, as well as any omissions, fall under the PREP Act. *See* §247d-6d(c)(4)(B) (PREP Act coverage applies to program planners who "reasonably could have believed that the countermeasure was administered or used in accordance" with the Act); *Garcia v. Welltower OpCo Group, LLC*, 2021 WL 492581 at *20–21 (2021), appealed at No. 21-55224 (9th Cir.) (noting that "OGC confirms that senior living communities are covered persons under the PREP Act because they are 'program planners'") (citing HHS Response Letter, August 14, 2020). *See also Rachal, supra*, at pp. 9-10 (recognizing that senior living communities are "covered persons" under the PREP Act).

42. Plaintiff's claims fall within the scope of the PREP Act as they are "claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of

a covered countermeasure." §247d-6d(a)(1). Plaintiff's claims arise out of Defendants' administration, allocation, use, and supervision of use, of COVID-19 countermeasures in response to the COVID-19 pandemic. Plaintiff challenges the adequacy of these countermeasures that Defendants used in fighting against COVID-19, specifically with respect to Defendants' use, misuse, allocation and administration of PPE and implementation of segregation and isolation measures, which allegedly "caused" Ms. Yore to contract COVID-19. *See* Am. Compl. ¶¶ 39–44, 49, 50, Exhibit B.

43.     Plaintiff's claims are, therefore, covered under the PREP Act and are removable to federal court under the complete preemption doctrine. *Beneficial,* 539 U.S. at 8; *Franchise Tax*, 463 U.S. at 23–24 (removal jurisdiction is warranted where preemptive force of federal statute is "so powerful as to displace entirely any state cause of action"—such a suit is "purely a creature of federal law"); *Metropolitan Life Ins. Co. v. Tayor, Gen. Motors Corp.*, 481 U.S. 58, 63–64 (1987) ("Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character"). *See also Garcia*, 2021 WL 492581; *Reilly v. Delta Healthcare II, LLC*, No: 8:21-cv-1013-JSM-JSS (M.D. Fla. June 7, 2021) (conceding applicability of PREP Act where court granted dismissal motion by senior living facility based on immunity and other protections provided under Act); *Branch v. Lilac Holdings, LLC*, No. 21-cv-00605-BAS-MDD (S.D. Cal. June 16, 2021) (same).

**IV.     FEDERAL QUESTION JURISDICTION ALSO EXISTS PURSUANT TO THE *GRABLE* DOCTRINE**

44.     HHS, by and through its Fourth Amended Declaration and Advisory Opinion 21-01, also confirms that the PREP Act confers a separate, independent grounds for federal question jurisdiction under the *Grable* doctrine. *See* Advisory Opinion 21-01, n4–5 (discussing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)).

45.     Advisory Opinion 21-01 states that "ordaining the metes and bounds of PREP Act protection in the context of a national health emergency necessarily means that the case belongs in federal court." *Id.* at 5. HHS provides that "there are substantial federal legal and policy … interests within the meaning of [the *Grable* doctrine] in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities." *Id.* (quoting 85 Fed. Reg. at 79,197).

46. HHS further states that: "Congress delegated to [the Secretary] the authority to strike the appropriate Federal-state balance with respect to particular covered countermeasures through PREP Act declarations." *Id.*

47. HHS's public policy application of *Grable* is consistent with the Supreme Court's long-standing rule "that in certain cases federal question jurisdiction will lie over state-law claims that implicate federal issues." *Grable,* 545 U.S. at 312. "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.*

48. The *Grable* court determined that there is no single test for determining whether an embedded federal issue exists, but that, in general, a two-step process determines whether a state law claim "arises under" federal law: (1) the state law claim must necessarily raise a stated federal issue that is actually disputed and substantial; and (2) federal courts must be able to entertain the state law claims "without disturbing a congressionally approved balance of state and federal judicial responsibilities." 545 U.S. at 314; *see also Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 US 804, 808 (1986).

49. Here, both prongs are satisfied. First, Plaintiff brings claims as a result for Defendants' alleged use or administration (or nonuse or non-administration) of covered countermeasures in connection with the care and treatment of Ms. Yore, which necessarily implicates disputed and substantial federal issues. *See* §247d-6d.

50. Second, as confirmed by Advisory Opinion 21-01 and the HHS Declaration, the PREP Act expresses a clear intention to supersede and preempt state control of the very issues raised by Plaintiff, *i.e.,* issues concerning Defendants' conscious decisions when to use or administer (or not) covered countermeasures, including COVID-19 PPE and diagnostic testing. This is evident in Congress' creation of a special three-judge federal court with a unique relationship with administrative agencies as the exclusive forum to determine pandemic issues that invoke matters of national critical infrastructure, national public health, and national security interests and questions. §247d-6d(e)(5)); *see e.g.* §§247d-6d(b), 247d-6d(i)(9) (referencing "security countermeasures" and the country's National Strategic Stockpile); *see also Grable*, 545 U.S. at 313 (the Supreme Court has "confined federal-question jurisdiction over state-law claims to those that

17

'really and substantially involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law'") (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912)).

51.     The embedded federal question doctrine supplies removal jurisdiction in actions, such as this, that "justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 54 U.S. at 312. "[T]here is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law claim." *Id.* at 319–320. The questions of federal surrogates, almost daily urgent federal directives, national critical infrastructure and public health threats, an exclusive federal cause of action, and a special federal court, all create substantial federal questions and require this Action's removal be sustained.

## CONCLUSION

Because Plaintiff's claims are completely preempted by federal law, raise embedded federal questions pursuant to the *Grable* doctrine, and question the acts taken by members of the nation's critical healthcare infrastructure under the authorization of a federal officer, those claims warrant removal to federal court. Removal to this Court is therefore proper under 28 U.S.C. §§1441 and 1442(a).

WHEREFORE, Defendants properly remove this action to the United States District Court for the Southern District of Florida, Palm Beach Division, pursuant to §§1331, 1441, 1442, and 1446.

**Hall Booth Smith, P.C.**

/s/ Jodi Barrett

Jodi G. Barrett, Esquire
FBN: 0901156
*Counsel for Defendants*
1400 Centrepark Blvd., Suite 400
West Palm Beach, FL 33401
T: 561-472-1020
F: 561-472-1021
jbarrett@hallboothsmith.com
tlatham@hallboothsmith.com
bbrostrom@hallboothsmith.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court using CM/ECF on **August 16, 2021**, upon Harry A. Shevin, Esq, SHEVIN LAW FIRM, P.A., *Counsel for Plaintiff* (eservice@shevinlawfirm.com, nxd@shevinlawfirm.com).

**Hall Booth Smith, P.C.**

/s/ Jodi Barrett

Jodi G. Barrett, Esquire
FBN: 0901156
*Counsel for Defendants*
1400 Centrepark Blvd., Suite 400
West Palm Beach, FL 33401
T: 561-472-1020
F: 561-472-1021
jbarrett@hallboothsmith.com
tlatham@hallboothsmith.com
bbrostrom@hallboothsmith.com