**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 9:21-CV-81417**

LAWRENCE YORE, as Personal Representative
For the ESTATE OF REBECA YORE,
Deceased,

      Plaintiff,

vs.

GVDB OPERATIONS, LLC, a Florida
Limited Liability Company d/b/a
GRAND VILLA OF DELRAY EAST
and JSMGV MANAGEMENT
COMPANY, LLC, a Florida Limited
Liability Company,

      Defendants.

_____/

**PLAINTIFF'S MOTION TO REMAND**

      Plaintiff, LAWRENCE YORE, as Personal Representatives of the ESTATE OF REBECA

YORE, Deceased, by and through the undersigned counsel, and pursuant to 28 U.S.C. § 1447,

hereby moves this Honorable Court to remand these proceedings back to the Fifteen Judicial

Circuit in and for Palm Beach County, Florida and in support thereof states as follows:

      1.      On August 16, 2021, the defendants jointly filed there Notice of Removal [D.E. 1].

      2.      Although the Notice of Removal alleges that this Court has subject matter

jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1442(a)(1), Plaintiff's Complaint asserts no

causes of action arising under federal law and Defendants are not Federal officers.

      3.      Plaintiff's claims for negligence arise solely under state law and raise no issues

of federal law. Under the well-pleaded complaint rule, this fact is normally determinative that

there is no federal question jurisdiction. *See Blab T.V. of Mobile, Inc. v. Comcast Cable*

*Commc'ns, Inc.*, 182 F.3d 851, 854 (11th Cir. 1999).

4.      Instead, Defendants allege that federal question jurisdiction exists because they intend to raise an affirmative defense under the Public Readiness and Emergency Preparedness("PREP") Act, 42 U.S.C. §§ 247d-6d, 247d-6e.[1]

5.      Defendants further claim as a defense that the Federal officer removal statute applies, 28 U.S.C. § 1442(a)(1).

6.      An affirmative defense cannot create federal question jurisdiction even if that defense arises under federal law. *See Kemp v. IBM Corp.*, 109 F.3d 708, 712 (11th Cir. 1997).

7.      Furthermore, the PREP Act should not be given "complete preemption" effect because this is a rare doctrine that only applies where Congress has shown a clear intent to completely displace state law. *See Cmty. State Bank v. Strong*, 651 F.3d 1241, 1260 n. 16 (11th Cir. 2011); *Atwater v. NFL Players Ass'n.*, 626 F.3d 1170, 1176 n. 7 (11th Cir. 2010).

8.      The text of the PREP Act shows no congressional intent to completely displace state negligence law, even where that state law is applied to claims involving COVID-19. The contrary opinion of the former general counsel for the Department of Health and Human Services is not entitled to any deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and is unpersuasive when compared to the clear text of the PREP Act.

9.      For these reasons, and those set forth in the accompanying Memorandum of Law, Plaintiff submits that this Court should follow the overwhelming authority of federal courts throughout the United States and remand this case to the state court in which it originated.

**WHEREFORE**, Plaintiff respectfully moves this Court to remand this case to the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

---

[1] As explained later in the Motion, the PREP Act grants immunity under certain limited circumstances. Immunity is an affirmative defense. See Espanola *Way Corp. v. Meyerson*, 690 F. 2d 827, 830 (11 Cir. 1982)(holding generally that immunity is an affirmative defense).

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Plaintiff's counsel advised defense counsel that they intend to move this Court to remand this case, and defense counsel advised that they did not consent to the relief requested in this Motion.

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

### I.      INTRODUCTION

Nearly every federal court to have considered this issue has granted a motion to remand from the Second through the Eleventh District Courts. *See Gunter v. CCRC OPCO-Freedom Square, LLC*, No. 8:20-cv-1546 (M.D. Fla. Oct. 29, 2020); *Estate of Olive B. Smith v. The Bristol at Tampa Rehab. And Nursing Ctr., LLC*, 2021 WL 100376 (M.D. Fla. Jan. 12, 2021); *Baskin v. Big Blue Healthcare, Inc.*, 2020 WL 4815074 (D. Kan. Aug. 19, 2020); *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518 (D.N.J. 2020); *Saldana v. Glenhaven Healthcare LLC*, 2020 WL 6713995 (C.D. Cal. Oct. 14, 2020); *Martin v. Serrano Post Acute LLC*, 2020 WL 5422949 (C.D. Cal. Sept. 10, 2020); *Sherod v. Comprehensive Healthare Mgmt. Svcs., LLC*, 2020 WL 6140474 (W.D. Pa. Oct. 16, 2020); *Lyons v. Cucumber Holdings, LLC*, 2021 WL 364640 (C.D. Cal. Feb. 3, 2021); *Perez v. Southeast SNF LLC*, 2021 U.S. Dist. LEXIS 70066 (W.D. Tx Apr. 12, 2021); *Maltbia v. Big Blue Healthcare*, 2021 U.S. Dist. LEXIS 60254 (D. Kan. Mar 30, 2021); *Estate of Winfred Cowan v. Lp Columbia Ky*, 2021 U.S. Dist. LEXIS 61708 (W.D. Ky Mar. 30, 2021);   Estate of Judith Joy Jones v. St. Jude Operating Co., 2021 U.S. Dist. LEXIS 43876 (D. Oreg. Feb. 16, 2021);[2]   *but see Garcia v. Welltower OpCo Group, LLC*, 2021

---

[2] Counsel is also aware of a Motion to Remand, fully briefed, and an Order granting a similar Motion as this Motion before this District Court regarding the exact same Defendant facility and the exact same defense counsel.  *See Lisitano v. GVDB Operations, LLC,* 9:21-cv- 80113-DM [D.E. 8]; Schleider *v. GVDB Operations, LLC,* 9:21-CV-80664-WPD [D.E. 8, 25]; Order Remanding Case to State Court, attached hereto as Exhibit A.

U.S. Dist. LEXIS 25738 (C.D. Cal. Feb. 10, 2021).[3]

This case should be remanded for four reasons:

First, under the "well-pleaded complaint rule," the allegations in a plaintiffs complaint "govern[] the jurisdictional determination." *Blab T.V. of Mobile, Inc. v. Comcast Cable Commc 'ns, Inc.*, 182 F.3d 851, 854 (11th Cir. 1999). As a result, "the question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). The complaint here does not identify or implicate any federal statute or regulation.

Second, even assuming the PREP Act were relevant to the allegations in the Complaint, the PREP Act does not create a private cause of action for the omissions identified in Plaintiff's complaint. This fact alone is sufficient, under most circumstances, to defeat federal question jurisdiction. *See Merrell Dow*, 478 U.S. at 817; *Crooke-Petite-El v. Bumble Bee Seafoods, LLC*, 502 Fed.Appx. 886, 887-88 (11th Cir. 2012).

Third, an affirmative defense of federal preemption does not create federal question jurisdiction. *Kemp v. IBM Corp.*, 109 F.3d 708, 712 (11th Cir. 1997). Even assuming Defendants' affirmative defense was relevant to this Court's jurisdiction, the defense does not raise a substantial, disputed question regarding the proper *legal* meaning of the PREP Act, but instead raises *factual*, case-specific issues as to whether the death of Plaintiff's decedent was caused by the use of a "covered countermeasure." Such fact-bound issues as the cause of disease or death cannot support federal question jurisdiction "without disturbing [a] congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg. Co.*, 54 U.S. 308, 314 (2005). *See also Adventures Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1296 (11th Cir. 2008) (noting that "fact-bound and situation-specific federal issues raised in the context of state law claims are insufficient to support

---

[3] The Garcia case cited by Defense appears to be a single outlier case, from a single Central District court which even conflicts with multiple decisions within that same District.

4

federal question jurisdiction) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006)).

Fourth, the PREP Act is not a "complete preemption" statute. Several courts have granted plaintiffs' motions to remand because complete preemption is a "rare doctrine" that does not apply to the PREP Act, *e.g., Estate of Maglioli, supra.* Nothing in the Declarations by the Secretary of Health and Human Services changes the preemptive force (or lack thereof) of the PREP Act, and the advisory opinion of HHS's former counsel is incorrect, has no legal force, and is entitled to no deference.

Therefore, this Court should remand this action.

## II.    FACTUAL BACKGROUND

This matter began after REBECA YORE was admitted as a patient to the Memory Care unit at GVDB, beginning on or about October 25, 2019.  Complaint ¶ 9.  During her admission COVID-19, broke out, she contracted the virus and ultimately died, all while in the care of GVDB. Complaint ¶¶11-12.   Plaintiff filed this cause of action as representative of the Estate, in the Fifteenth Judicial Circuit in and for Palm Beach County Florida. In Plaintiff's Complaint it is specifically stated that:

> 14.This matter is **NOT** subject to the PREP Act, 42 U.S.C.A. §247d-6d(a)(1) because the allegations in this Complaint **DO NOT** allege any "countermeasures" taken by the Defendants as defined by the Prep Act.  In fact, Plaintiffs allege the lack of, and complete failure to provide, any appropriate countermeasures to prevent the rampant spread of COVID-19 at Defendants' facility.

Complaint ¶ 14.

Additionally, Plaintiff has alleged that Defendants' actions were "willful misconduct or gross negligence [and their] conduct was in disregard of a known or obvious risk that was so great as to make it highly probable that the harm it caused, outweighed any actions it took. *See e.g.*, Complaint ¶ 74.  Contrary to any "use" of countermeasures, Plaintiff has alleged

that Defendants:

> a. **Failed** to provide or require personal protective equipment to workers and residents.
>
> b. **Failed** to put in place adequate protection measures in the face of a global pandemic which put at high risk, its patients, such as the deceased.
>
> c. **Withheld** information from its own workforce, residents, as well as family members and individuals with specific power of attorney for residents regarding the dangers associated with its infection control measures.

Complaint ¶ 17 (emphasis added). It is further alleged that these failures were so egregious that over 40 patients contracted COVID-19, at least 16 in the deceased's same memory care unit, and over 10 people died.  Complaint ¶ 17.  The breadth of the Defendants' horrendous failures to follow basic guidelines of sanitation and cleanliness were outlined in a detailed report by the Florida Department of Health.  Complaint ¶ 22.  Further, the facts which support Plaintiff's allegations of willful and grossly reckless behavior by Defendants are specifically alleged in detail in the Complaint.  Complaint ¶ 19-67.  The Complaint then only alleges four counts: Count I - Survival Claim against GVDB Operations, LLC for Violation of Fla. Stat. § 429, et.seq.; Count II - Wrongful Death Claim against GVDB Operations, LLC for Violation of Fla. Stat. § 429, et.seq.; Count III - Survival Claim against JSMGV Management Company, LLC for  Violation  of  Fla. Stat. § 429, et.seq.; Count IV - Wrongful Death Claim against JSMGV Management Company, LLC for Violation of Fla. Stat. § 429, et.seq.

Defendants removed this case on the purported basis that the PREP Act, 42 U.S.C. §§ 247d- 6d, 247d-6e provides a preemption defense, which Defendants argue must be heard in this Court. Because the PREP Act forms the primary basis for Defendants' claims of [4] jurisdiction,  some discussion of that Act is necessary.

The PREP Act was enacted on December 23, 2005, and "authorizes the Secretary of Health and Human Services (the Secretary) to issue a Declaration to provide liability immunity

to certain individuals and entities (Covered Persons) against any claim of loss caused by, arising out of, relating to, or resulting from the manufacture, distribution, **administration, or use of**, medical countermeasures (Covered Countermeasures)." The PREP Act also "authorizes the Countermeasures Injury Compensation Program (CICP) to provide benefits to certain individuals or estates of individuals who sustain a covered serious physical injury as the direct result of the **administration or use of** the Covered Countermeasures.[4]

> The PREP Act is invoked when the Secretary of [HHS] issues a declaration determining … that a disease or other health condition constitutes a public health emergency. 42 U.S.C. § 247d-6d(b). If the Secretary determines that such conditions exist, he or she 'may make a declaration, through publication in the Federal Register, recommending … the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures, and stating that [42 U.S.C. 247d-6d(a)] is in effect with respect to the activities so recommended.' The Secretary has issued such a declaration regarding the COVID-19 pandemic.

*Baskin*, *4.

> In sum, the PREP Act creates immunity for all claims of loss ***causally connected to the administration or use of covered countermeasures***, which are certain drugs, biological products, or devices. … State laws that differ or conflict regarding the administration or use of covered countermeasures are preempted.

*Baskin*, *5.

As another District Court in a COVID-19 case noted "Section 247d-6d does contain an explicit provision regarding preemption, though it does not apply here … this provision pertains to a form of preemption, 'conflict preemption,' but does not by itself mandate a

---

[4] Significantly, the CICP program instructions state in section I of the instructions: "[i]n order to be considered for Program benefits, an injured countermeasure recipient **must have been administered or used a covered countermeasure** according to the terms of a declaration (or in a good faith belief of such)." (emphasis added). Then again in Section II of the instructions, the CICP programs states "[a]n individual who **was administered or who used** a covered countermeasure may be eligible for out-of-pocket, unreimbursable medical and lost employment income benefits." Then again in Section II it states [t]o be a survivor eligible for death benefits, the injured countermeasure recipient must have died **as a direct result of his or her injuries resulting from the administration or use** of a covered countermeasure." This phrase is used continuously throughout the CICP program instructions. Ex. B

federal forum or completely preempt all claims arising out of the adequacy, or not, of the medical care afforded by these defendants when infected with the COVID-10 virus." *Maglioli, supra*, 478 F. Supp. 3d at 528.

Defendants' notice of removal claims that, although there is no express preemption provision in the PREP Act providing for a federal forum, the PREP Act should be given "complete preemption" status, and alternatively posits that Plaintiff's Complaint, which is based entirely on state-law claims, raises substantial questions of the meaning of federal law that should be adjudicated in a federal forum, i.e. the *Grable* analysis.

## III.    LEGAL PRINCIPLES GOVERNING REMOVAL JURISDICTION

"It is axiomatic that the jurisdiction of the federal courts is limited, with its scope defined by the Constitution and by statute." *See B, Inc. v. Miller Brewing Co*., 63 F.2d 545, 548 (5th Cir. 1981). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case" *Smith v. GTE Corp*., 236 F.3d 1292, 1299 (11th Cir. 2001).

"On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc*., 591 F.3d 1337, 1343 (11th Cir. 2009). Removal jurisdiction exists only if the federal district court could have exercised original jurisdiction over the action. *See* 28 U.S.C. §1441(a). To meet its burden, the removing party must prove, by a preponderance of the evidence, the facts supporting federal jurisdiction. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

5    "Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala. v. Am. Tobacco Co*.,

168 F.3d 405, 411 (11th Cir. 1999). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *Id.* Accordingly, "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." *Miller Brewing*, 663 F.2d at 548-49.

## IV.    PLAINTIFF'S STATE-LAW NEGLIGENCE CLAIMS RAISE NO QUESTION OF FEDERAL LAW THAT WOULD CREATE FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. § 1331.

### A. Generally, a Complaint Alleging a State-Law Cause of Action Will Not Support Federal Question Jurisdiction.

In *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294-95 (11th Cir. 2008), the Eleventh Circuit reaffirmed the familiar rule that "In determining whether jurisdiction exists under 28 U.S.C. § 1331, a court must look to the well-pleaded complaint alone." (citing *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).[5]  The plaintiff in *Adventure Outdoors* was a firearms dealer that had been accused by investigators of violating various federal laws. *Id.* at 1293- 94. The dealer filed a lawsuit in state court alleging defamation and other related state-law claims. *Id.* at 1294. The defendant filed a notice of removal, and the District Court concluded it had jurisdiction, then dismissed several of the dealer's claims. *Id.* at 1295. The Eleventh Circuit reversed because the causes of action as framed by the dealer's original complaint raised state-law issues. Although the defamatory statements concerned alleged violations of federal law, the Court did not consider that enough to warrant federal jurisdiction where the complaint otherwise did not assert any right to recovery under federal law, stating "Our concern is that by authorizing the exercise of federal jurisdiction here, we would open

---

[5] An exception to the well-pleaded complaint rule is the complete preemption doctrine, which requires a statute to have preemptive force so "extraordinary" that it completely preempts state law and "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (citations omitted). As explained later in the Motion, the complete preemption doctrine is inapplicable to this case because the PREP Act does not apply.

the doors of the federal courts in this circuit whenever a defamation defendant accuses a plaintiff of violating federal law." *Id.* at 1302.

Plaintiff's Complaint does not even allege a violation of Federal law, it here alleges entirely state-law causes of action. The Complaint has even less of a connection to federal issues than the complaint in *Adventure Outdoors.* Under the well-pleaded complaint rule, it must be presumed that this Court does not have subject matter jurisdiction. *See Madzimoyo v. The Bank of New York  Mellon Trust Co., N.A.*, 440 Fed.Appx. 728 (11th Cir. 2011).

### B.  The PREP Act Does Not Create a Private Right of Action for the Omissions that Form the Basis of Plaintiff's Claims.

In *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804 (1986), the Supreme Court held that a plaintiff's allegation that a defendant had violated a federal statute, as a basis for meeting an element of a state law cause of action, did not give rise to federal question jurisdiction under 28 U.S.C. § 1331, where the federal statute did not provide a private right of action.  In inquiring "whether jurisdiction may lie for the presence of a federal issue in a nonfederal cause of action," 478 U.S. at 810, the Supreme Court placed primary emphasis on whether the federal statute in question creates a private right of action. "Given the significance of the assumed congressional determination  to  preclude federal private remedies, the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." *Merrell Dow*, 478 U.S. at 814. Because Congress did not provide for a private remedy for violations of  the FDCA, this "is tantamount to  a  congressional conclusion that the presence of a  claimed violation of the statute as an element of a  state  cause of  action is insufficiently 'substantial' to confer federal-question jurisdiction." *Id.*

More recently, in *Grable & Sons Metal Prods., Inc. v.  Darue Eng'g & Mfg. Co.*, 545 U.S. 308 (2005), the Supreme Court indicated that *Merrell Dow* was not intended to provide a "bright-

line rule" that the absence of a private right of action in a federal statute precludes exercise of federal question jurisdiction over a state law claim premised in part on the provisions of a federal statute. *Grable*, 545 U.S. at 317. "Accordingly, *Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." *Grable*, 545 U.S. at 318. Even while approving of this exercise of federal question jurisdiction, the *Grable* Court noted that, under the *Merrell Dow* decision, "A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts." *Id.* at 319. The Supreme Court has thus remained consistent on the point that state-law claims – even where they depend on violations of federal law - do not support the exercise of federal jurisdiction.

While necessarily acknowledging the *Grable* Court's caveat that *Merrell Dow* did not create a bright-line rule, the Eleventh Circuit has continued to treat the absence of a federal private right of action as a critical component of federal question jurisdiction.  Indeed, in *Crook-Petite-El v. Bumble Bee Seafoods, LLC*, 502 Fed.Appx. 886 (11  Cir. 2012), the Eleventh Circuit flatly rejected the notion that alleging a violation of a federal statute as part of a state tort law claim could support federal jurisdiction, where the federal statutes did not provide a private right of action. *Crook-Petite-El*, 502 Fed.Appx. at 887-88; *see also Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1302-03 (11th Cir. 2008) (noting that the absence of a private right of action in federal criminal statutes was strong evidence that Congress intended that state courts should adjudicate state law claims that included allegations involving federal criminal laws).  The federal district courts in Florida, when analyzing similar jurisdictional issues after *Grable*, have also continued to place key importance on whether the federal statute in question creates a private right of action.  "The absence of a federal cause of action for FDCA violations weighs heavily in favor of the conclusion that the federal issues in this case are not substantial enough to support

federal question jurisdiction." *Marcus v. Medical Initiatives, Inc.*, 2013 WL 718630 at *6 (M.D. Fla., Feb. 27, 2013).

The PREP Act does not create any federal cause of action for ordinary negligence, regardless of whether that negligence causes a COVID-19 infection. This fact "weighs heavily in favor of the conclusion" that there is no federal question jurisdiction.

### C. An Affirmative Defense of Federal Preemption Does not Support Federal Question Jurisdiction.

The PREP Act's preemption provision provides only for conflict preemption. *Maglioli, supra*. Conflict preemption, like express or field preemption, is a species of "ordinary preemption." *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1203 n.4 (10th Cir. 2012). "[O]rdinary preemption may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint." *Geddes v. American Airlines, Inc.*, 321 F.3d 1349, 1352 (11th Cir. 2003). The court also stated that "a case may *not* be removed to federal court on the basis of a federal defense, including that of federal preemption." *Id.* at 1352-53 (emphasis in original, citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

Defendants' position is that they are entitled to protection from liability by virtue of employing "covered countermeasures" under the PREP Act. The have not yet pleaded any facts in support of its defense, and no allegations in the Complaint support that defense. Presumably, Defendants intend to try to establish that the standard of care to which Florida law subjects Defendants generally has been displaced by the provisions of the PREP Act. This is a defense that Defendants can invoke "in both state and federal court" under *Geddes* and *Caterpillar*. A conflict preemption defense like the one Defendants raise does not support federal question jurisdiction; a state court is just as capable of adjudicating this defense.

### D. Defendant's Preemption Defense does not Support Federal Question Jurisdiction under *Grable.*

In some cases, federal courts have found that a federal statute so thoroughly displaces state law that it constitutes "complete" preemption. Otherwise, federal preemption defenses may be raised in state court. *See Geddes.* Defendant suggests a third option that has not yet been recognized by any federal court: finding federal question jurisdiction on the basis that an affirmative defense raises "substantial federal legal and policy issues" within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mfg.*, 545 U.S. 308 (2005). The rationale of *Grable* has only ever been applied to federal-law issues raised by a state-law **cause of action**, not a defense.

Even as expressed by Defendants, though, the defense they intend to raise does not implicate a pure legal question under the PREP Act, but instead implicates factual issues. Plaintiff's Complaint does not allege that Defendants employed "covered countermeasures" as that term is used in the PREP Act, or that Ms. Yore contracted COVID-19 as a result of the use of such countermeasures. The Complaint simply alleges that Defendants were negligent under Florida law.

Defendants argue that Plaintiff's claim may still be preempted because the omission giving rise to state-law liability might (as a matter of fact) be the failure to use a covered countermeasure. Plaintiff's Complaint does not say as much, but taking Defendants' argument by its terms, it continues that the PREP Act may provide protection from liability even where Defendants opt **not** to use a covered countermeasure. For this point it relies on the HHS's Fourth Declaration, 85 Fed. Reg. 79190 (Dec. 9, 2020).  Defendants claim that the Fourth Declaration "urges courts to implement '*exclusive* federal jurisdiction' of COVID-19 actions." [D.E. 1, p. 17]. The phrase "exclusive federal jurisdiction" does not appear anywhere in the Fourth Declaration, so it is unclear what Defendants intended to quote. What that Declaration says (p. 79197) is:

> Where there are limited Covered Countermeasures, *not*

administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute "relating to . . . the administration to . . . an individual" under 42 U.S.C. § 247d-6d. For example, consider a situation where there is only one dose of a COVID- 19 vaccine, and a person in a vulnerable population and a person in a less vulnerable population both request it from a healthcare professional. In that situation, the healthcare professional administers the one dose to the person who is more vulnerable to COVID-19. In that circumstances the failure to administer the COVID-19 vaccine to the person in a less-vulnerable population "relat[es] to . . . the administration to" the person in the vulnerable population. The person in the vulnerable population was able to receive the vaccine only because it was not administered to the person in the less- vulnerable population. Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections.

In other words, if a provider must ration covered countermeasures, the decision on how to ration it "**can** fall within the PREP Act" and thus would be afforded protection from liability.

There are two reasons why this passage in the Fourth Declaration does not create jurisdiction: (1) it is beyond the scope of a Declaration under the authorizing statute, and therefore not entitled to any deference, and (2) even if this Court were to follow that rationale, [6] Defendants' preemption defense would be so fact-bound as to preclude federal question jurisdiction.

1. The Fourth Declaration's expansion of the scope of liability protection is not entitled to deference.

The plain text of the PREP Act provides that its protection from liability **only** applies if a plaintiff's injury was caused by the actual **use** of a covered countermeasure. 42 U.S.C. 247d- 6d(a)(2)(B) ("immunity ... applies to any claim for loss that has a **causal relationship** with the administration to or use by an individual of a covered countermeasure"). The non-use of a countermeasure does not afford any such protection under the statute.

The former Secretary of HHS attempted to expand this protection in the Fourth Declaration by reinterpreting the statute, but such interpretation is not authorized. The authority for

issuing declarations is found in 42 U.S.C. § 247d-6d(b). A declaration's contents are to consist of five portions:

> (A) the categories of diseases, health conditions, or threats to health for which the Secretary recommends the administration or use of the countermeasure;
> (B) the period or periods during which … subsection (a) [liability protections] is in effect …
>
> (C) the population or populations of individuals for which subsection (a) [liability protections] is in effect with respect to the administration or use of the countermeasures …
>
> (D) the geographic area or areas for which subsection (a) is in effect with respect to the administration or use of the countermeasure … and
>
> (E) whether subsection (a) is effective only to a particular means of distribution [such as by donation or commercial sale].

42 U.S.C. § 247d-6d(b)(2)(A)-(E).

Nothing in the statute delegates any authority to the Secretary of HHS to interpret or expand the meaning of the PREP Act's preemption provision or liability protections.[6]  In order to be afforded *Chevron* deference (*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)) the agency action must be by a rule "promulgated pursuant to authority Congress has delegated to the official." *Gonzales v. Oregon*, 546 U.S. 243, 258 (2006) (citation omitted). Where an executive official's interpretation of a statute extends beyond the rulemaking authority granted by that statute, courts do not give that interpretation any deference. *Id.* By contrast, where Congress expressly delegates a cabinet Secretary to "make such interpretations" of a statute, *Chevron* deference applies. *Heimmermann v. First Union Mortg. Corp.*, 305 F.3d 1257, 1261 (11th Cir. 2002).

The PREP Act did not delegate any authority to the Secretary of HHS to interpret the

---

[6] Defendants also suggest that the Fourth Declaration stated "Through the PREP Act, Congress delegated to [the Secretary of HHS] the authority to strike the appropriate Federal-state balance . . ." [D.E. 1 p. 17]. No one disputes that the Secretary was empowered to identify covered countermeasures, but Congress certainly did not delegate the authority to strike a federal-state balance for purposes of determining a federal court's jurisdiction.

breadth of preemption, nor to interpret the extend of liability protections, beyond the terms of the PREP Act itself. Instead, it delegated authority to define five discrete aspects of those liability protections. This delegation does not include the authority to extend liability protections beyond the terms of the statute, which only apply to covered entities' actual employment of countermeasures. The Fourth Declaration goes beyond that delegation of authority and purports to extend those protections (in some limited circumstances) to covered entities' decisions *not* to employ covered countermeasures. The inclusion of such language in the Fourth Declaration was *ultra vires* and should not be afforded any deference.

2. Even if Grable Jurisdiction Applied to an Affirmative Defense, and Even if the Fourth Declaration's Interpretation of the PREP Act were Entitled to Deference, Defendants' Preemption Defense is Fact-Bound and Situation-Specific.

The circumstances in which a federal issue embedded within a state cause of action will be sufficient to invoke federal question jurisdiction under 28 U.S.C. § 1331 are limited to cases raising "nearly pure issue[s] of law," the resolution of which would establish a rule applicable to numerous cases. *Empire Healthchoice*, 547 U.S. at 700.[7]   By contrast, to the extent a state-law claim raises issues regarding a violation of federal law that are "fact-bound and situation-specific," such federal issues do *not* raise a substantial federal question sufficient to invoke federal question jurisdiction. *Id.* at 700-01.

The Eleventh Circuit has emphasized this rule. "Unlike *Grable*, *Empire Healthchoice* presented a 'fact-bound and situation-specific' issue; thus, federal jurisdiction was inappropriate in the latter case." *Adventure Outdoors*, 552 F.3d at 1299. Although the defendants in *Adventure Outdoors* attempted to characterize the plaintiffs' claims as raising a "dispute over

---

[7] The plaintiff in *Empire Healthchoice* was a federal employee health plan's insurance carrier, which attempted to enforce subrogation rights against a personal injury settlement. Although the dissenting opinion noted that "There is little about this case that is not federal" (547 U.S. at 702 (Breyer, J., dissenting)), the Court held that it did not "arise under" federal law.

the meaning of federal law," the Eleventh Circuit rejected that effort. "[T]he defendants mischaracterize the nature of the dispute." *Id.* In the Court's view, "resolution of the plaintiffs' claims ultimately would require an evaluation of [Plaintiffs'] factual argument.  To be sure, the jury would have to apply federal law to reach its decision.  But as the Supreme Court explained in *Grable*, the federal courts have rejected the 'expansive view that mere need to apply federal law in a state-law claim will suffice to open the "arising under" door.'" *Adventure Outdoors*, 552 F.3d at 1300 (quoting *Grable*, 545 U.S. at 313). This Court has likewise applied the rule that "fact-bound" allegations that federal law has been violated do not raise substantial federal questions.  *See Meyer v. Health Management, Assoc., Inc.*, 841 F.Supp.2d 1262, 1268-69 (S.D. Fla. 2012).

This case is further removed from *Grable* because Plaintiff's claim itself does not raise ***any*** issue of federal law, neither a legal nor factual issue. It is the preemption defense that, according to Defendants, will raise an issue of federal law. But to the extent that they even have such a defense, they are limited to the potential circumstance of rationing countermeasures identified in the Fourth Declaration. Plaintiff submits that this interpretation of the statute is incompatible with its plain text. But even if that were not the case, a "rationing" defense would only apply if the jury determined that the reason Defendant failed to satisfy its state-law duty to Ms. Yore was that it was rationing covered countermeasures and had to prioritize other residents. This is the very definition of "fact-bound" allegations which should be adjudicated by a state court.

### E . "Complete Preemption" is a Rare Doctrine that Does Not Apply to the PREP Act.

The only basis left to invoke federal question jurisdiction is through the exceedingly rare "complete preemption" doctrine. As courts throughout the country have correctly concluded, this doctrine does not apply to the PREP Act.

"Complete preemption is a rare doctrine that entirely transforms a state-law claim into

a federal claim, regardless of how the plaintiff framed the legal issue in the complaint." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1260 n. 16 (11th Cir. 2011). The "Supreme Court has applied [it] to only three federal statutes: § 301 of the [Labor Management Relations Act], the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1132, and §§ 85 and 86 of the National Bank Act." *Atwater v. NFL Players Ass'n.*, 626 F.3d 1170, 1176 n. 7 (11th Cir. 2010).

When courts give "complete preemption" effect to a statute, it is because Congress has shown a clear intent to completely displace state law. For instance, section 301 of the LMRA explicitly grants federal courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. 185. So, any question "relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or a suit alleging liability in tort." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).

The PREP Act does not mandate a federal forum for an ordinary negligence case. Instead, "Only claims related to the administration of designing, manufacturing, and distributing covered countermeasures to individuals is preempted." *Estate of Maglioli*, 2020 WL 4671091 at *8, n.6, citing 42 U.S.C. § 247d-6d(b)(8). Although it creates a federal claims process, that only applies to claims made by an "eligible individual for a covered injury ***directly caused by the administration or use of a covered countermeasure***." 42 U.S.C. § 247d-6e(b)(1). Plaintiff in this case would obviously have no such claim, since the factual allegations are that her decedent's disease and death were caused by the ***failure*** to take precautions. Even if such precautions were "covered countermeasures" (which is not pleaded in the Complaint, and cannot therefore be considered the operative facts for purposes of this Motion) there is no cause of action to replace the one alleged under state law. Congress has therefore not "displaced" the state-law cause of action with a federal substitute. It has also not displaced the state-law cause

of action by immunizing Defendant. Immunity from liability is factually dependent on whether a plaintiff's claim was "caused by, arising out of, relating to, or resulting from the ***administration to*** or the ***use by*** an individual of a covered countermeasure". 42 U.S.C. § 247d-6d(a)(1). The same section further clarifies that for immunity to apply, the claim must have "a ***causal relationship*** with the administration to or use by an individual of a covered countermeasure". 42 U.S.C. § 247d-6d(a)(2)(B). Plaintiff's Complaint in this case in fact, claims the exact opposite. Complaint ¶ 14.  The Complaint does not allege that the **use** of a covered countermeasure by any individual caused the disease or death at issue.

The plain text of the statute demonstrates that Congress intended to immunize certain covered entities from liability under a narrow factual scenario: where an injury, disease, or death, is caused by the use of countermeasures that have been designated by the Secretary of HHS. There is nothing in the statute that displaces all state-law causes of action for negligence in which the standard of care might have involved the use of covered countermeasures. Such a broad reading of the statute is unjustified by the text.

Every federal court to have considered this issue, except one, agrees. The court in *Estate of Maglioli* put it succinctly:

> The PREP Act, as amended, is an emergency response to the pandemic. Its evident purpose is to embolden caregivers, permitting them to administer certain encouraged forms of care (listed COVID 'countermeasures') with the assurance that they will not face liability for having done so. Nothing in the language of the Act suggests that it was intended to more broadly displace state-law causes of action for, e.g., malpractice or substandard care– even if proper care possibly *would* have entailed administration of such countermeasures.

2020 WL 4671091 at *8.

Defendants attempt to find support in an "advisory opinion" by the former general counsel to HHS. "[A]n interpretation contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking" is "like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force

of law" *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). These materials "do not warrant *Chevron*- style deference." *Id.* (citing *Reno v. Koray*, 515 U.S. 50, 61 (1995)). The advisory opinion itself notes that it does not have the force of law.

Even if the former counsel's opinions had been adopted in a Declaration by the Secretary of HHS, they would still be entitled to no deference because they are beyond the "exercise of the Secretary's delegated lawmaking powers". *Id.* (citing *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 157 (1991)).  Despite the assertions by Defendants that the subsequent administration adopted this reading, the Acting Secretary of HHS issued a Fifth Amended Declaration under the PREP Act, effective January 28, 2021, which does incorporate some prior advisory opinions, but notably not the one on which Defendants rely.

In any event, an attorney's opinion on the preemptive effect of a statute, and a federal court's jurisdiction to hear a preemption defense, is worth no more deference than the persuasiveness of the opinion demands. In this case, the advisory opinion conflicts with the text of the statute, which does not purport to displace state negligence law, and the decisions of multiple jurists throughout the country.

Complete preemption is exceedingly rare and "in 'the absence of explicit direction from Congress,' the Supreme Court has indicated its reluctance to find the extraordinary preemptive power necessary for complete preemption. *Geddes*, 321 F.3d at 1353 (citation omitted). Such explicit direction is lacking here. The PREP Act is not a complete preemption statute.

**V.    DEFENDANTS ARE NOT FEDERAL OFFICERS, OR ACTING UNDER THE UNITED STATES, ITS AGENCIES OR OFFICERS, AND THEREFORE IS NOT ENTITLED TO REMOVAL PURSUANT TO 28 U.S.C. 1442(a)(1)**

Similar to Defendants other arguments *infra*, this issue has been previously decided by District Courts in the context of COVID-19 and requests for Federal Jurisdiction.  *See Nava v. Parkwest Rehab. Ctr. LLC*, 2021 WL 1253577 (C.D. Cal. Apr. 5, 2021). Unlike the federal question removal statute, § 1442(a)(1) is "liberally construed," although "not limitless." *Fidelitad,*

*Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018). Relevantly, "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153, 127 S. Ct. 2301, 168 L. Ed. 2d 42 (2007).   Defendants here fail to identify and specific directive with respect to their designation as a Federal agent other than general guidelines which were established for the entire Country and alternatively residents of the State of Florida generally.

Even "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153, 127 S. Ct. 2301, 168 L. Ed. 2d 42 (2007).   A "special relationship" must exist between the federal and private entities. *Id.*, at 157. "This relationship typically involves subjection, guidance, or control [and] the private person's acting under must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co., (St. Chas. I)*, 935 F.3d 352, 356 (5th Cir. 2019) (citations and internal quotations omitted).   A private company's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official."   This is true even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored.  *Watson*, 551 U.S. at 153.

In the instant matter, Defendants have absolutely no "special relationship" with any Federal officer or Agency of the government.  At most, this merely identifies Defendants as a "highly regulated" entity, and this is insufficient to confer Federal jurisdiction. *See Watson*, 551 U.S. at 153; *St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co., (St. Chas. II)*, 990 F.3d 447, 452 (5th Cir. 2021).  Therefore, remand is appropriate.

## VI.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully moves this Court to remand this

case to the Circuit Court for the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.

Dated this 23rd day of August, 2021.

Respectfully submitted,

*/s/ Thomas Jablonski*
Thomas Jablonski, Esq.
Florida Bar No.: 121866
Shevin Law Firm PLLC
7777 Glades Road, Suite 212
Boca Raton, Florida 33434
Phone:(561) 409-0138
eservice@shevinlawfirm.com
Attorneys for Plaintiff